UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| GREAT LAKES ACQUISITION CORP. d/b/a ELARA CARING, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 20-10781 |
| PARADIGM LIVING CONCEPTS, LLC d/b/a PARADIGM HEALTH, AMY STONE and MITASHA OWENS, | ) ) ) ) | Hon. Bernard A. Friedman<br><br>Magistrate Judge Michael J. Hluchaniuk |
| Defendants. | ) | |

**DECLARATION OF MITASHA OWENS**

I, Mitasha Owens, in accordance with 28 U.S.C. § 1746, state as follows:

1. I am a competent adult with personal knowledge of the matters stated in this declaration. If called upon to testify under oath, my testimony would be the same as in this declaration.

2. I am 44 years old. I am divorced and remarried. I have three sons, two by my first husband and one with my current husband. My oldest son just completed his sophomore year at Asbury University, studying Christian ministry. My middle son is a senior in high school with plans to attend college to become a diesel mechanic. My youngest son is 6 years old.

3. I have been involved in the health care industry for my entire career. I knew at an early age I wanted to be a nurse and help others. I was raised in a very compassionate home and taking care of others was instilled in me at a young age.

4. I graduated from high school with Academic's Honors Diploma in 1994. I started college with the goal of nursing school. During college, I got married and my career plans were temporarily put on hold after I was placed on bed rest with our first child. I subsequently

obtained my license as a Certified Nursing Assistant (CNA) and worked as a CNA from 1996-2007. I also worked for a case management company for a brief time. I returned to nursing school and graduated in 2007 with an Associates of Science in Nursing (ASN) degree. After graduation from nursing school, I worked as a floor nurse in a long term care facility run by St. Elizabeth Heathcare. I later became unit manager of a dementia unit at a sister facility, St. Mary's Healthcare. In 2009, I began working in home health and hospice with a weekend option position with RN responsibilities. I did this for a few years until I began working for Great Lakes Acquisition Corporation, then doing business as Great Lakes Caring ("GLC"), in 2012.

5. When I began working for GLC, I was a Home Care RN Case Manager. I worked directly with homecare patients, reviewing and following through with their care plans. I also supervised licensed practical nurses and home health aides, answered questions and addressed any patient concerns relating to their home health services and care plans. I worked on a full-time basis at GLC's branch in Lafayette, Indiana. At that time, GLC was a family owned, regional company based in Michigan. GLC provided home health and hospice services. GLC did business in Michigan, Illinois and Indiana. GLC was focused on providing quality care to patients and I enjoyed my job.

6. In May 2013, as a result of complications from a pregnancy, I began working for GLC on a prn (as needed) basis. I worked on a prn basis until March 2014, when I stopped working due to complications from my pregnancy. After the birth of my third child, I began working for GLC again, in December 2014, as a Preceptor in GLC's Education Department. I worked at GLC's branch in Kokomo, Indiana. As a Preceptor, I assisted with onboarding new employees and providing basic hospice education and homecare education to clinicians.

7. On November 10, 2015, I signed an Employment Agreement with GLC in my capacity as a Preceptor. The Employment Agreement had a retroactive effective date of December 1, 2014. A copy of what appears to be my Employment Agreement is attached to GLC's Motion for Preliminary Injunction as Exhibit H.

8. I worked as a Preceptor for GLC over 4 years. In April 2018, I was informed that GLC was merging with two other large home health companies (Dallas-Texas based Jordan Health Services and Cromwell-Connecticut based National Home Health Care) to form a network of companies known as Elara Caring. GLC began doing business as "Elara Caring." I wanted to get back to working directly with patients. I applied for, was offered and accepted a Transitional Liaison position at the company's branch in Lafayette, Indiana; however, I did not actually begin working as a Transitional Liaison until June 2018. I did not sign a new Employment Agreement with GLC or Elara Caring after the merger or in connection with the change of my position from Preceptor to Transitional Liaison.

9. As a Transitional Liaison, I talked with home health patients and the company's home health team members and assisted with home health patients transitioning to hospice care. I also instructed them on hospice and communicated with them regarding the transition process. I worked in the Lafayette, Indiana branch. On occasion, I would cover the Transitional Liaison role in Kokomo when the Transitional Liaison in Kokomo was taking time off from work.

10. After the Merger, I noticed changes in GLC/Elara Caring's business operations. GLC went from a small regional company to part of a huge national home health care operation, with tens of thousands of employees and offices throughout the United States. Elara Caring went through a number of different Chief Executive Officers and department leaders in a relatively short time. I began to feel as though the focus was on financials and that patients were seen as

numbers. I felt like Elara Caring was pushing for patients to go from home health to hospice care to keep patients out of the hospital and in service with Elara Caring and for additional services and more revenue for Elara Caring. We also experienced a number of service failures and began to lose clinicians. Employees began expressing frustrations and concerns with the new company. I felt there was poor communication from corporate/management and I no longer enjoyed working for Elara Caring.

11. I began looking for a new job in or around June 2019. I looked at several places and eventually reached out to Paradigm Health ("Paradigm") in or around mid to late November 2019, regarding a position as an RN Case Manager.[1] Paradigm is an Indianapolis based home health, hospice and community-based palliative care company. I missed working in the field directly with patients. The non-compete provision in my Employment Agreement with GLC has an exception, whereby I can work for a competitor if I am providing direct patient care. The only position I ever applied for or discussed with Paradigm was as a RN Case Manager, providing direct patient care.

12. I spoke with Jeff Jarecki, the Chief Executive Officer of Paradigm, by phone regarding a position as an RN Case Manager, providing direct care to hospice patients. Mr. Jarecki shared Paradigm's philosophy and commitment of providing a culture of compassionate support and care for patients, families and employees. I arranged for and subsequently interviewed with Mr. Jarecki and other Paradigm representatives.

13. The only position I interviewed and applied for with Paradigm was a RN Case Manager, providing care directly to patients. During my interview, Mr. Jarecki asked general questions about my employment with GLC/Elara Caring and what my main responsibilities were, as did the other companies I interviewed with. No one from Paradigm asked me for any

---

[1] RN Case Manager is also commonly referred to or known as a Clinical Nurse or field nurse.

Page 4 of 11

information about GLC/Elara Caring's specific business practices or processes, including its CAREtinuum program, or for any confidential information. I explained to Mr. Jarecki that my primary role as a Transitional Liaison was to assist home care patients with proper plan of care and, if appropriate, transition the patient from home health to hospice care by communicating with the patients and their families. I was also asked about what I did for GLC before I was a Transitional Liaison. I told Paradigm that I had been a Preceptor in the Education Department, assisting with on boarding new employees, and that I had been a Homecare RN Case Manager and mentor. I also mentioned that in my early career had I experience in long term care.

14.     I did not disclose or discuss my Employment Agreement with Paradigm during my interview, or before I was hired, since a direct patient care position is an express exception to the non-compete provision in my Employment Agreement with GLC.

15.     I did not share, and have not shared, any confidential or private business information about GLC or Elara Caring, including pricing information, customer names, referral sources or its processes or procedures with Paradigm, and no one from Paradigm has ever asked me for any such information.

16.     Paradigm offered me a position as a Hospice RN Case Manager, providing hospice care directly to patients, primarily in Carmel, Westfield and Noblesville, Indiana in Hamilton County. I accepted the position and submitted formal, written notice of resignation to Elara Caring, via an email to my supervisor, Stacey Bruss, on December 12, 2019. During the first two weeks of December, I had previously talked with Ms. Bruss about resigning from my employment. I discussed my concerns about feeling like patients were viewed as numbers not people, service failures, staffing shortages, how the community was responding negatively to merger, the lack of communication within company, company error in paying facility bills,

company errors with paychecks, as well as not understanding the direction/purpose/vision of Elara Caring into the future.

17. In my resignation notice, I expressed my gratitude to Ms. Bruss and the company and I informed Ms. Bruss that I would be taking a position as a Hospice RN Case Manager, "providing hands on patient care." I also told Ms. Bruss that I would assist with the transition of a new Transitional Liaison. A true and accurate copy of my resignation notice and email are attached as <u>Exhibit 1</u>.

18. The day before I submitted by formal written resignation notice, I called Ms. Bruss to let her know that I would be submitting my resignation. Ms. Bruss was abrupt and stated "you know you have a non-compete." I replied with an acknowledgement that yes, I know I have a non-compete and/but that I was going to work as a RN Case Manager. Ms. Bruss asked me where I was going and I told her I was going to work for "Paradigm, a small company with similarities of personal service for patients, comparable to the old Great Lakes Caring." I, again, explained to Ms. Bruss the concerns I had, which ultimately led me to leave Elara Caring, including, feeling like patients were viewed as just a number, service failures, the uncertainty with management given the number of different CEOs and department leaders in a short amount of time, the number of clinicians who had left the company, the poor communication within the company, and errors in paying facility bills). I had previously shared my concerns with Ms. Bruss, on more than one occasion, since the merger from GLC to Elara Caring. Ms. Bruss asked me if Paradigm had a transition program (like CAREtinuum) and I told her "not that I am aware of." I did not tell Ms. Bruss that I was going to "head up a new transition program."

19. While I was working out my notice period with Elara Caring, Ms. Bruss informed me that she did not plan to "back fill" my position and that other Indiana Transitional Liaisons

Page 6 of 11

would support the Lafayette team. She asked for my input on who I thought would be best suited for that branch and I shared my thoughts with her and I cooperated with any transitional issues. I prepared a detailed report about patients for the Transitional Liaison team, as requested by Ms. Bruss and Samantha Nartker, Midwest TL team leader. I also changed voicemail on my work phone, directing any non-urgent TL needs to call Paige Lawrence, along with her contact information, in an effort to ensure that the patients continued to receive uninterrupted care from Elara.

20. Ms. Bruss also asked that speak with Elara Caring's VP of Strategy about my situation. I returned a call from the VP of Strategy and shared with him my concerns about Elara Caring. Specifically, I talked with him about the disorganization I perceived following the merger, the lack of communication from corporate, service failures for patients, uncertainty of company and departments, unrealistic expectations of employees, my inability to see policies and procedures because the company intranet was not functioning properly, the company's lack of education as to changes, paycheck errors, and the company not paying facilities in a timely manner thereby impacting the company's reputation within the community.

21. My last day of employment with GLC was January 3, 2020. Samantha Nartker, Transitional Liaison Team Leader, instructed me to return my laptop, tablet and cell phone to a staff member in the Lafayette or Kokomo branch. I returned my laptop with two chargers, tablet with charger, cell phone, and company badge, to Charity Thompson, Human Resources. I left an organizational binder on the desk in my office at the Lafayette, Indiana branch, after cleaning out the desk. I did not knowingly take any GLC or Elara Caring property or documents.

22. I began working for Paradigm as a Hospice RN Case Manager on January 6, 2020, and have remained, at all times, in that position. My job for Paradigm has always been providing hands on care directly to patients.

23. In April 2020, after GLC filed this lawsuit, while I was looking for a copy of my GLC Employment Agreement, I found a GLC/Elara Caring transition binder in my computer bag at my house. I had not used the binder in quite some time and I simply forgot that I had that other binder when I resigned. I also found some GLC/Elara Caring documents clipped to the back of my calendar book. Those documents were a resident fact sheet with my notes, a workup of a resident, a phone list with old work numbers/contact information of Transitional Liaisons, a weekly tracker sheet, a homecare flowsheet, and process template. I informed Paradigm (Mr. Jarecki). I also informed Paradigm's attorney, Debra Mastrian, and promptly arranged to give Ms. Mastrian the binder and documents. I drove to Ms. Mastrian's house and gave her the binder and documents on April 10, 2020. I did not make a copy of the binder or documents. I did not share the binder or contents of the binder or other documents with anyone at Paradigm.

24. At no time, after I resigned from Elara Caring, did I take the GLC/Elara Caring binder out of my computer bag, until I gave it to Paradigm's attorney. I did not use or even look at that binder or the GLC/Elara Caring documents clipped to the back of my calendar.

25. I have conducted a thorough search and I do not have any GLC/Elara Caring confidential information in my possession, custody or control.

26. No one from Paradigm has ever asked me for any GLC or Elara Caring documents or property and I have not shared any GLC or Elara Caring documents or property with Paradigm. Paradigm has not asked for, and I have not shared, information about Elara Caring's CAREtinuum program, Medalogix, or its software systems with Paradigm. I had some

training on the CAREtinuum program, but I had limited exposure to the Medalogix platform. While I have a general understanding of the CAREtinuum program, I do not have any technical knowledge of CAREtinuum, Medalogix, or any other software systems used by Elara Caring, or the business behind those models.

27. I read the declarations of Ms. Bruss and Paige Lawrence, Exhibits C and E to GLC's Motion for Preliminary Injunction. [ECF Nos. 5-4, 5-6]. Paradigm has never asked me to start up a patient transition program and I am not aware of any intention of Paradigm to start a patient transition program. I have not had any discussions with Paradigm regarding starting a patient transition program or "rolling out" a patient transition program like the Elara Caring's CAREtinuum program or any other Elara Caring program, or anything to that effect. I have never told anyone that I was going to "head up" or start a transition program at Paradigm. I do not recall ever telling Ms. Bruss or Ms. Lawrence, or anyone else for that matter, that Paradigm was "thrilled" or "impressed" with my background in, or knowledge of, Elara Caring's CAREtinium program or any anything to that effect.

28. I have not solicited any employees of GLC/Elara Caring to leave their employment or to work for Paradigm.

29. In Ms. Bruss's declaration, she alleges that I solicited Paige Lawrence, another Transitional Liaison whom I worked with at Elara Caring. I spoke with Ms. Lawrence frequently during my time as a Transitional Liaison. We were work colleagues and had a friendly relationship. We would discuss our frustrations with Elara Caring and how to expand or strengthen our roles. We also talked about our families. On more than one occasion, we discussed service failures and our feeling that, after the merger, it seemed like patients were viewed as just numbers at Elara Caring. We also discussed how it was becoming more difficult

to transition patients from home care to hospice in an ethical manner and that some physicians were referring to other hospice companies. We also discussed our own careers, including potentially seeking other jobs, and that if either of us chose a different role or company, we would miss the work comradery with each other. I do not recall telling Ms. Lawrence that Paradigm wanted me to start a patient transition program. Paradigm has never requested me to do that and I am not aware of any intention of Paradigm to do so. I recall making a comment to Ms. Lawrence that someday I would like to manage a transition team, or become a Nurse Practitioner, but I also told her that now was not a good time for me with everything going on in my life. In addition to balancing raising my three boys and working full time, I was helping take care of my mother. My mother had end stage chronic obstructive pulmonary disease (COPD). She lived in Kokomo, Indiana, which is why I moved to Kokomo several years ago.

30. After I resigned from GLC/Elara Caring, I spoke to Ms. Lawrence on a couple of occasions. We asked each other how we were doing. We both said we were doing good. Ms. Lawrence asked my how my job with Paradigm was going. I responded along the lines of that I was doing good and that Paradigm was a good fit for me and it seemed like Paradigm kept in mind what is best for the patients. We then talked about other topics, such as nursing shortages, challenges of change and growth, and our families. I recall asking her, one time, something along the lines of whether she would consider working for Paradigm or another company and that it would be nice to work together again someday. She responded something to the effect that she was always willing to speak to other companies. I was not trying to solicit her to leave Elara Caring or work for Paradigm. I made this statement due to our previous work comradery and our prior conversations. I did not follow up with her regarding working for Paradigm and I did not share her information with Paradigm.

Page **10** of **11**

31. Paradigm has never asked me to solicit or recruit employees of GLC or Elara Caring to Paradigm and specifically instructed me not to solicit any GLC/Elara Caring employees. Likewise, Paradigm has never asked me about any patient referral sources of GLC/Elara Caring, or requested that I solicit any patient referral sources. I have not solicited any patient referral sources of GLC/Elara Caring for Paradigm, nor do I have any intention to do so. I am not aware of any new patient referral sources or increase in market share that Paradigm has gained as a result of my employment.

32. I do not harbor any ill will toward GLC or Elara Caring. In fact, I have attempted to refer business to Elara Caring since I resigned. On or about March 27, 2020, I referred Ralph Burkhart of Triology Health to Elara Caring's Account Executive, Brenda Buehler, in the Lafayette area. Moreover, at the time of my resignation from Elara Caring, my mother was receiving hospice care from Elara Caring's Kokomo, Indiana branch. When my mother found out I had resigned, she asked me if she should get hospice services elsewhere and I encouraged her to stay with Elara Caring. My mother continued to receive hospice care from Elara Caring. She since passed away on March 12, 2020.

**I DECLARE, UNDER THE PENALTY OF PERJURY, THAT THE FOREGOING STATEMENTS ARE TRUE AND CORRECT.**

Dated: 5/14/2020

DocuSigned by:
Mitasha Owens
52AE07810B294A7...
Mitasha Owens

# Exhibit 1

**Attachments:** Mitasha Owens Resignation.docx

**Importance:** High

**From:** Mitasha Owens, RN <mowens4@elara.com>
**Sent:** Thursday, December 12, 2019 11:16 AM
**To:** Stacey Bruss, RN <sbruss@elara.com>; Samantha Nartker RN, BSN <snartker@elara.com>
**Cc:** Charity Thompson <cthompson2@elara.com>
**Subject:** Mitasha Owens Resignation Letter

Stacey,

As you and I discussed via phone, I am resigning from Elara Caring. I am getting back to hands on patient care as RNCM. I very much appreciate the opportunity you have given me.

Thank You!

Sincerely,

Elara Caring

**Mitasha Owens, RN** | Transitional Liaison
c 765.431.0614 | f 877.395.0055 | mowens4@elara.com
Right Care • Right Time • Right Place

EMAIL NOTICE: This communication may contain confidential and sensitive information. If you are not the intended recipient or believe that you have received this communication in error, do not copy, retransmit, disseminate, or otherwise use the information. Respond to the sender that you have received this e-mail in error and delete the copy you received.

EMAIL NOTICE: This communication may contain confidential and sensitive information. If you are not the intended recipient or believe that you have received this communication in error, do not copy, retransmit, disseminate, or otherwise use the information. Respond to the sender that you have received this e-mail in error and delete the copy you received.

1

Mitasha Owens

1714 N Bell St

Kokomo, IN 46901

765 434-2416

speedyriverrats@yahoo.com

December 12, 2019

Stacey Bruss

Vice President Caretinuum

Elara Caring

900 Cooper St

Jackson, MI 49202

Dear Mrs. Bruss,

I would like to notify you that I am resigning from my position as Transitional Liaison for Elara Caring effective January 3, 2020.

Thank you very much for the opportunity you've given me to learn all about right care at the right time and in the right place. I have genuinely enjoyed my time with the company, and I believe that the experience has taught me much more about care coordination as well as how to effectively advocate for patients in a multi-facet manner.

Next month I will be taking a position as a Hospice RNCM providing hands on patient care of a newer Hospice company, but in the meantime, I will be happy to assist in the transition of a new Transitional Liaison.

Sincerely,

Mitasha Owens, RN